UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
ROSEANN YARUSI,

               Plaintiff,

      - against -            **MEMORANDUM AND ORDER**

S. SEDGHI INCORPORATED,        14 Civ. 7963 (NRB)

               Defendant,

----------------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


    Defendant in this action has moved to dismiss on the grounds that the complaint fails to satisfy New York's Statute of Frauds. We dismiss plaintiff's contract claim, but conclude that her restitution claim survives.

**FACTS**[1]

    Plaintiff alleges that she earned regularly commissions of 2.5% as a nationwide independent sales representative, marketing defendant's "Mignone" line of children's clothing to Costco, a large American retailer. Compl. ¶¶ 3, 5, 7, 23. As relevant to this case, plaintiff alleges that she met with Costco's purchasers in June 2013, who selected styles from Mignone's spring 2014 collection. ¶¶ 9-11. The following

---

[1] Except where noted, the following facts are drawn from the complaint. Compl. & Jury Demand ("Compl."), <u>Yarusi v. S. Sedghi Inc.</u>, Index No. 652338/2014 (N.Y. Sup. Ct. N.Y. Cty.), <u>filed herein as</u> Notice of Removal, Ex. A, ECF No. 1.

month, Costco ordered approximately 300,000 units for shipment in February and March 2014.  ¶¶ 12-13.  In accordance with the parties' custom, the commissions on these sales would have amounted to approximately $90,000, and would have been paid in 2014 after defendant received its payment from Costco.  ¶¶ 19, 21.

Defendant's principal, Shore Sedghi, terminated plaintiff's employment in August 2013 and refused to pay commissions beyond the end of that year.  ¶¶ 16-17, 20. Although Costco received Mignone dresses in Spring 2014 and paid defendant for the dresses as the result of plaintiff's efforts, defendant refused to pay plaintiff commissions on the revenue associated with the Costco order.  ¶¶ 19-20.  Plaintiff now seeks a commission for the 2014 Costco shipment under her alleged contract with defendant or, in the alternative, as restitution.

To survive New York's Statute of Frauds, N.Y. Gen. Oblig. Law § 5-701 (McKinney 2012),[2] plaintiff presents several writings.

First, plaintiff presents an unsigned letter from Shore Sedghi to plaintiff, dated August 20, 2013, on the letterhead of "S. Sedghi, Inc. DBA MIGNONE".  The letter reads as follows:

---

[2] Plaintiff has not argued that any other state's Statute of Frauds governs.

Dear Roseann,

As we discussed, our corporate showroom is now located in Los Angeles and logistically speaking, it makes more sense both geographically and economically for me to procure and service our accounts from here in L.A. As a result, S. Sedghi, Inc. DBA Mignone will no longer require the services of The Rose Garden[3] to Rep our merchandise. This is effective immediately. However, for those accounts for which you acted as our Rep, The Rose Garden will be paid the agreed upon commission for shipments through December 31, 2013. As in the past, the commission will be paid once Mignone receives payment from the retailer.

If you have any questions, please let me know and thank you for your services.

Sincerely,
Shore Sedghi

Sedghi Letter, Ex. A to Decl. of Robert P. Avolio ("Avolio Decl."), Jan. 29, 2015, ECF No. 16.

Second, plaintiff presents commission statements on the letterhead of "MiGNONE HOMEMADE USA" (the "Commission Statements," Ex. B to Avolio Decl.). The earliest of these is dated August 15, 2011, and refers to shipments to Costco dated May 11 to 13, 2011. The latest is dated May 4, 2012, and refers to shipments dated February 16 to 17, 2012. Each line shows the details of a shipment, including the retailer's payment and the commission, which is either 2.5% or 5% for each

---

[3] Plaintiff owns and operates The Rose Garden. See Compl. ¶ 3. We take no view as to whether plaintiff or The Rose Garden is a proper party, and we have no reason to believe that adding The Rose Garden as a plaintiff would affect our diversity jurisdiction.

entry.  On the later statements, the commission for Costco orders is consistently 2.5%.  One additional statement supplied by defendant lists shipment dates (apparently to Costco) between April 16 and July 25, 2013.  See Reply Affirmation of Lawrence Chakey ("Chakey Affirm."), Ex. A., Feb. 12, 2015, ECF No. 20.[4]

Third, plaintiff relies on dozens of checks totaling over $200,000.  See Letters of Steven C. DePalma, Aug. 5 and 9, 2015 (checks attached to undocketed letters).  These checks were drafted on accounts held by "MIGNONE" between April 2010 and July 2013.  The signatures are illegible, but could plausibly represent the name "Shore Sedghi" or "S. Sedghi."  The memo fields frequently refer to "commissions" and "showroom fees." Several checks also refer to "Costco" and correspond with Costco-related commission statements.

## DISCUSSION

## I. THE PROCEDURAL POSTURE

Plaintiff filed her complaint in New York Supreme Court. Defendant timely removed pursuant to our diversity jurisdiction and timely answered, raising the Statute of Frauds as one of several affirmative defenses.  See Notice of Removal, Oct. 2, 2014, ECF No. 1; Answer 5, Oct. 8, 2014, ECF No. 4.  We held an

---

[4] Additionally, defendant later supplied commission statements related to companies other than Costco.  See Letter of Steven C. DePalma, Aug. 5, 2015.

initial conference on October 30, 2014, at which we instructed the parties to engage in written discovery before undertaking depositions. The parties advised us in mid-December that they had completed their written discovery. Before scheduling depositions, however, defendant informed us that it wished to file the present motion. At a pre-motion telephone conference, we expressed our belief that the motion would have to be treated as a motion for summary judgment once the parties inevitably sought to rely on evidence outside the complaint. Nevertheless, defendant styled its motion as a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

As a threshold matter, defendant's motion is not properly characterized as a motion to dismiss for failure to state a claim, as such a motion must be made before filing an answer. See Fed. R. Civ. P. 12(b) (flush text). More importantly, plaintiff has obviously pleaded the elements of her contract and restitution claims. The Statute of Frauds is an affirmative defense and defendant pleaded it as such; therefore, plaintiff need not plead the existence of a sufficient writing in order to state her claim. See Palmer v. A. & L. Seamon, Inc., No. 94-cv-2968 (JFK), 1995 WL 2131, at *2, 1995 U.S. Dist. LEXIS 4, at *4 (S.D.N.Y. Jan. 3, 1995).

It can be appropriate for a court to decide a Statute of Frauds question at the pleading stage. For instance, a court may dismiss a case if the plaintiff attempts to rely on the doctrine of part performance, while the pleaded facts conclusively show that the part performance doctrine cannot apply as a matter of law. See Messner Vetere Berger McNamee Schetterer EURO RSCG Inc. v. Aegis Grp. PLC, 974 F. Supp. 270, 273 (S.D.N.Y. 1997), aff'd, 186 F.3d 135 (2d Cir.), in conformity with 93 N.Y.2d 229, 711 N.E.2d 953 (1999). A court may also dismiss a case if the plaintiff amends the complaint specifically to overcome the Statute of Frauds. See Mui v. Union of Needletrades, Indus. & Textile Emps., No. 97-cv-7270 (HB), 1998 WL 513052, at *7, 1998 U.S. Dist. LEXIS 12783, at *19-20 (S.D.N.Y. Aug. 18, 1998). In these scenarios, the plaintiff argues that his pleaded facts suffice to overcome the Statute of Frauds, and the court disagrees. Judgment on the basis of the pleadings alone is, however, inappropriate in this case, where the pleaded circumstances that allegedly demonstrate the existence of an oral or implied contract are different from the un-pleaded writings that allegedly satisfy the Statute of Frauds.

Because both parties have presented records and affidavits beyond the pleadings, which we have no reason to exclude, Rule 12(d) requires that we convert defendant's motion into one for

summary judgment, provided that the parties receive a "reasonable opportunity to present all the material that is pertinent to the motion." Plaintiff argues that we should not decide the Statute of Frauds issue until plaintiff deposes Shore Sedghi, and cites one cases in which summary judgment on the merits was deemed inappropriate before the conclusion of discovery. See Hellstrom v. Dep't of Veterans Affairs, 201 F.3d 94, 97 (2d Cir. 2000). We disagree, because nothing in Sedghi's oral testimony can generate a writing that would aid plaintiff in opposing this motion. See Trebor Sportswear Co. v. The Limited Stores, Inc., 865 F.2d 506, 511-12 (2d Cir. 1989).[5] Furthermore, there is no ambiguity in the offered writings that a deposition could clarify. Finally, from a technical perspective, plaintiff has not attempted to "show[] by affidavit or declaration that, for specified reasons, [she] cannot present facts essential to justify [her] opposition," as Rule 56(d) requires, despite her demand that we convert defendant's motion to a motion for summary judgment. For all these reasons, plaintiff must rely on whatever writings she

---

[5] Plaintiff appears to believe that the Second Circuit found summary judgment in Trebor Sportswear to be premature. In fact, the Circuit affirmed a grant of summary judgment, agreeing with the District Court that plaintiffs had "proffered no persuasive basis . . . to conclude that further discovery would yield proof of a written agreement that would satisfy the statute of frauds, which was, after all, the nub of the appellee's motion for summary judgment." 865 F.2d at 512.

herself possesses or that defendant produced during the written phase of discovery.

## II. **LEGAL STANDARDS**

A motion for summary judgment is appropriately granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When making this determination, "the Court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought. Winfield v. Trottier, 710 F.3d 49, 52 (2d Cir. 2013) (internal quotation omitted). Although defendant bears the ultimate burden of proof on its Statute of Frauds defense, plaintiff bears a burden to produce facially sufficient writings. See Trebor, 865 F.2d at 509-10.

## III. **THE STATUTE OF FRAUDS**

### A. **Generally**

New York's Statute of Frauds provides that certain contracts are void "unless [the contract] or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent." N.Y. Gen. Oblig. Law § 5-701(a) (McKinney 2012). Subdivision 10 of the Statute encompasses "a contract to pay compensation for services rendered . . . in negotiating the . . . sale . . . of a business opportunity, business, its good will, inventory,

fixtures or an interest therein . . . ."  A commission for locating a purchaser of goods falls within the scope of this provision.  See, e.g., Int'l Trading & Sales, Inc. v. Philipp Bros., Inc., 99 A.D.2d 983, 983, 468 N.Y.S.2d 123, 125 (1st Dep't 1983) (mem.) (applying statute to the "introduction of parties for the purpose of entering into an agreement to supply a nation with its requirement for fertilizer"); Victor v. Lange, 28 A.D.2d 525, 525, 280 N.Y.S.2d 211, 212 (1st Dep't 1967) (per curiam) (applying statute to "services rendered in securing a purchaser for a quantity of books").

Furthermore, subdivision 10 (unlike the Statute's other subdivisions) bars a plaintiff from pursuing an alternative theory of restitution.  See § 5-701(a)(10) ("This provision shall apply to a contract implied in fact or in law . . . .") (emphasis added); Intertex Trading Corp. v. Ixtaccihuatl S.A. de C.V., 754 F. Supp. 2d 610, 616 (S.D.N.Y. 2010); see also Minichiello v. Royal Bus. Funds Corp., 18 N.Y.2d 521, 525, 223 N.E.2d 793, 795-96 (1966) (observing that the current version of subdivision 10 explicitly precludes recovery in quantum meruit, and holding that the pre-1964 version of subdivision 10 implicitly precluded any such recovery).  Nevertheless, as discussed below, it is possible that a writing is sufficient to save a restitution claim even when the same writing is insufficient to save a contract claim.

9

## B. **The Subscription Requirement**

A writing is considered to be "subscribed" by the party to be charged if "a name, written or printed, [is] inserted or adopted with an intent, actual or apparent, to authenticate the writing." Mesibov, Glinert & Levy, Inc. v. Cohen Bros. Mfg. Co., 245 N.Y. 305, 310, 157 N.E. 148, 149 (1927) (Cardozo, C.J.). Personal signatures and business letterhead are common forms of subscription, but other examples demonstrate the wide range of possibilities: a name at the bottom of an email (Stevens v. Publicis S.A., 50 A.D.3d 253, 254–55, 854 N.Y.S.2d 690, 692 (1st Dep't 2008)), a manager's initials (Crabtree v. Elizabeth Arden Sales Corp., 305 N.Y. 48, 55, 110 N.E.2d 551, 553 (1953)), "the letters 'O. K.' in the margin or at the top and [a] name, either in full or by initials" (Mesibov, Glinert, 245 N.Y. at 310, 157 N.E. at 149), or a letter written in the third person (id.).

## C. **The Required Content of a Writing**

An integrated contract is not necessary to satisfy the Statute of Frauds. A signed note or memorandum is sufficient, and multiple writings that collectively contain the essential terms may be combined to evidence a contract. See Weiner & Co. v. Teitelbaum, 107 A.D.2d 583, 583, 483 N.Y.S.2d 313, 314 (1st Dep't 1985) (mem.).

In the context of a contract claim, the contract's duration and the plaintiff's rate of compensation are essential terms that must appear within the subscribed writings, <u>see Crabtree</u>, 305 N.Y. at 54, 110 N.E.2d at 553, as is the subject of the contract, although the subject of the contract can be described in general terms. <u>See, e.g.</u>, <u>Direct Inv. Partners AG v. Cerberus Global Invs., LLC</u>, No. 07-cv-3310 (LLS), 2008 WL 355467, at *7, 2008 U.S. Dist. LEXIS 8953, at *17–20 (S.D.N.Y. Feb. 7, 2008) (holding that an acknowledgment that defendant engaged plaintiff to help expand into Germany satisfied the Statute); <u>Ladenburg Thalmann & Co. v. Tim's Amusements</u>, 275 A.D.2d 243, 246–47, 712 N.Y.S.2d 526, 529 (1st Dep't 2000) (holding that a letter mentioning a "fee for arranging the acquisition of Winstuff and Goodstuff" satisfied the Statute).

In the context of a restitution or quasi-contract claim, however, the writings may omit certain terms that would be necessary to prove a contract. "In an action in Quantum meruit . . . for the reasonable value of brokerage services, if it does not appear that there has been an agreement on the rate of compensation, a sufficient memorandum need only evidence the fact of plaintiff's employment by defendant to render the alleged services." <u>Morris Cohon & Co. v. Russell</u>, 23 N.Y.2d 569, 575–76, 245 N.E.2d 712, 715 (1969). Following <u>Morris Cohon</u>, some courts have followed a rule that the writing must

include all material terms but the rate of compensation, while most courts have followed a more permissive rule that the writing need only show that the defendant engaged the plaintiff in connection with a transaction.  See Springwell Corp. v. Falcon Drilling Co., 16 F. Supp. 2d 300, 313–19 (S.D.N.Y.) (Sotomayor, J.) (collecting cases), reconsidering 16 F. Supp. 2d 300, 301–11 (S.D.N.Y. 1998).

As then-Judge Sotomayor pointed out, see id. at 315, the more liberal rule is more consistent with Morris Cohon itself, where the relevant writing, which the Court of Appeals considered sufficient, stated that the defendant had "dealt with no . . . persons other than [the plaintiff] as broker or finder." Morris Cohon, 23 N.Y.2d at 573, 245 N.E.2d at 714. Applying this in Springwell, the court found sufficient a letter from defendant's agent to the effect that the agent had discussed with the plaintiff a retainer to cover plaintiff's introduction of defendant to an investment banker.[6]  16 F. Supp. 2d at 313, 315–16.  See also Blye v. Colonial Corp. of Am., 102 A.D.2d 297, 298, 476 N.Y.S.2d 874, 875 (1st Dep't 1984) (finding sufficient a writing that described two possible commission structures); cf. Intercontinental Planning v. Daystrom, Inc., 24 N.Y.2d 372, 379, 248 N.E.2d 576, 580 (1969)

---

[6] Defense counsel conceded at oral argument that then-Judge Sotomayor favored the broader interpretation of Morris Cohon and that her view has not been rejected since Springwell.

(holding that a written reference to a finder's fee for one transaction did not support a claim arising from a transaction involving different parties); <u>Klein v. Smigel</u>, 44 A.D.2d 248, 354 N.Y.S.2d 117 (1st Dep't 1974) (finding insufficient a written request that plaintiff promise not to assert a claim as finder or broker).

The more liberal rule is also more compatible with the substantive law. The Statute of Frauds requires that essential facts be evidenced in writing; the substantive law determines which facts are essential. Therefore, if the offered writings evidence the elements of a restitution claim——that the plaintiff performed work for the defendant that neither party regarded as gratuitous——then the writings suffice to overcome the Statute of Frauds. <u>See</u> <u>Shapiro v. Dictaphone Corp.</u>, 66 A.D.2d 882, 885, 411 N.Y.S.2d 669, 673 (2d Dep't 1978) (holding that defendant's letter constituted adequate evidence "that services were requested and the parties reasonable expected that such services were not to be performed gratuitously"). To import additional requirements from contract law would be "to afford [the defendant] a means of evading" what the law of restitution regards as a "just obligation[]," <u>Morris Cohon</u>, 23 N.Y.2d at 574, 245 N.E.2d at 715 (quoting 4 Williston on Contracts § 567A (3d ed.)).

**D.  <u>The Part Performance Exception</u>**

Finally, plaintiff relies on the doctrine of part performance to excuse compliance with the Statute of Frauds, arguing that defendant partially fulfilled the alleged oral contract by paying commissions on earlier Costco sales.  The New York Court of Appeals has rebuked federal courts for incorrectly stating that the Court of Appeals had adopted this doctrine as a judicially-created exception to section 5-701. See Messner Vetere Berger McNamee Schmetterer Euro RSCG, Inc. v. Aegis Grp. PLC, 93 N.Y.2d 229, 235 n.1, 711 N.E.2d 953, 956 n.1 (1999).  Since Messner Vetere, state and federal courts have consistently held that part performance does not apply to cases arising under section 5-701.  See Spencer Trask Software & Info. Servs. LLC v. RPost Int'l Ltd., 383 F. Supp. 2d 428, 450-51 (S.D.N.Y. 2003); Gural v. Drasner, 114 A.D.3d 25, 31-32, 977 N.Y.S.2d 218, 222-23 (1st Dep't 2013); Stephen Pevner, Inc. v. Ensler, 309 A.D.2d 722, 722, 766 N.Y.S.2d 183, 184 (1st Dep't 2003); Valentino v. Davis, 270 A.D.2d 635, 637-38, 703 N.Y.S.2d 609, 611-12 (3d Dep't 2000).

We agree, and not only because of the Court of Appeals' strongly worded dicta in Messner Vetere.  The equitable doctrine of part performance originated in cases seeking specific performance (an equitable remedy) of contracts for the sale of land, see, e.g., Niven v. Belknap, 2 Johns. 573, 587 (N.Y. 1807), and has since been codified in that context.  See

14

N.Y. Gen. Oblig. Law § 5-703(4). By contrast, the section at bar, 5-701, contains no mention of the part performance doctrine, and little if any pre-codification precedent applied the doctrine beyond the context of specific performance of a realty contract.

Furthermore, even if the doctrine of part performance applied to section 5-701, it would not apply on the facts presented here because plaintiff's alleged meetings with Costco were not "unequivocally referable to the alleged oral agreement." Bronner v. Park Place Entm't Corp., 137 F. Supp. 2d 306, 312 (S.D.N.Y. 2001) (citing Anostario v. Vicinanzo, 59 N.Y.2d 662, 664, 450 N.E.2d 215, 216 (1983)). "Persons having no formal agreement attempt to broker arrangements all the time in the hope that some reward will be forthcoming. . . . [Brokering services are] equally explainable as preparatory to a future, or continuing business relationship." Bronner, 137 F. Supp. 2d at 312–13.

IV. **APPLICATION**

    A. **The Writings**

As described above, plaintiff relies on her termination letter, her commission statements, and cleared checks. Each of these writings is subscribed within the meaning of the Statute of Frauds. The termination letter and commission statements are on business letterhead, the checks display defendant's

15

trade name "Mignone" as the account-holder, and the checks appear to have been signed by Shore Sedghi.

The termination letter clearly acknowledges plaintiff's employment as a "Rep" of defendant's merchandise. It does not, however, state (even in equivocal terms) the rate of compensation, the duration of plaintiff's employment, the products that plaintiff marketed, or the businesses to which plaintiff marketed those products. The "Company" column in each commission statement indicates that most of plaintiff's commissions related to Costco. Each commission statement either states a commission rate explicitly or includes payment data that can be used to calculate an implied commission rate. For each transaction, the commission rate is either 2.5% or 5%, and the statements dated on or after May 4, 2012, consistently apply a 2.5% to transactions related to Costco.[7]

**B. Breach of Contract**

With respect to the contract claim, three essential contract terms are in dispute: the commission rate, the scope of the contract, and the duration of the contract. For the commission rate, plaintiff relies on the rates that appear or

---

[7] Defendant suggested at oral argument that no commissions are owed to plaintiff because plaintiff might have been employed only as a "finder" of new business. Defendant's payment of commissions over a long span of time tends to refute defendant's view. Just as plausibly, plaintiff and defendant halved plaintiff's commission rate for Costco shipments in recognition that, by mid-2012, defendant had come to have a relationship with Costco independent of plaintiff.

can be imputed from the commission statements.  For the scope of the contract, plaintiff relies on defendant's statement that plaintiff was a "Rep" and the commission statements referring to Costco and other stores.  For the duration term, plaintiff relies on the background principle that a contract is indefinite and terminable at will in the absence of an explicit duration term.

Defendant argues that the commission statements fail to evidence a commission rate because the rate is inconsistent across the statements.  This argument fails at the summary stage, where we must view the evidence in the light most favorable to the non-movant, because the statements consistently reflect a rate of 2.5% for Costco transactions from Spring 2012 onward.  A reasonable jury could conclude that the writings evidence a 2.5% commission rate for commissions earned in 2013.  Therefore, we do not grant summary judgment on the ground that the commission rate is missing.

However, the writings fail to indicate the scope of the agreement.  It is not clear from the documents whether plaintiff's responsibilities covered certain retailers or types of retailers, certain products in the Mignone line, a certain geographical area,[8] or a certain sales medium.  Plaintiff's

---

[8] Plaintiff alleges that she was a nationwide sales representative.  None of the documents indicate this, except in the most oblique way.  The commission

documentary evidence need not define the scope of her agreement with precision, but she cannot proceed on a contract theory without some general definition of her role in writing.

Furthermore, defendant is correct that the essential duration term is missing from the submitted writings. We have no quarrel with the proposition that, as a matter of ordinary contract law, a court may fill in a missing duration term. To satisfy the Statute of Frauds, though, the duration may not be oral or implied; it must be evidenced in writing. None of the commission statements or checks indicate that plaintiff would continue to act as a sales representative indefinitely or through 2013. The termination letter implies that the contract was terminable at will, but does not imply that the alleged contract was of indefinite duration. An at-will contract may be intended to last for a particular time or indefinitely.

Because the available written documents fail to allege essential terms of plaintiff's alleged oral or implied contract, we dismiss plaintiff's contract claim.

## C. **Restitution**

Plaintiff can obtain restitution, in contrast to her contract claim, by showing that she performed services for defendant's benefit, and that neither she nor defendant

---

statements show that The Rose Garden was located in New York, and the termination letter says that defendant's move to Los Angeles eliminated the need for plaintiff's services.

regarded those services as gratuitous.  The submitted writings are adequate to evidence these facts.  The termination letter refers to an arrangement for plaintiff to act as defendant's "Rep" in exchange for an "agreed upon commission," corroborating the general nature of plaintiff's employment and the parties' understanding that her labor was not free.  And, even though the commission statements fail to indicate the full scope of plaintiff's employment, the statements at least show that sales to Costco were within the scope of plaintiff's efforts.

Of course, these writings are not conclusive of plaintiff's claims.  Defendant has denied that plaintiff contributed to the disputed sales, and defendant may prove its case after discovery, either at trial or on summary judgment. At this stage, it is sufficient for plaintiff that the writings could reasonably be viewed as evidence of each element of her unjust enrichment claim.

<u>CONCLUSION</u>

For the foregoing reasons, defendant's motion (ECF No. 10) is converted to one for summary judgment, is granted as to plaintiff's contract claim, and is denied as to plaintiff's restitution claim.

The parties are directed to confer and propose a schedule for further discovery.

19

Dated:    New York, New York
          August /3 , 2015

                                        NAOMI REICE BUCHWALD
                                        UNITED STATES DISTRICT JUDGE


Copies of the foregoing Memorandum and Order have been mailed
on this date to the following:

*Counsel for Plaintiff*:

Robert P. Avolio, Esq.
Avolio & Hanlon, P.C.
3150 Brunswick Pike, Suite 120
Lawrenceville, NJ 08648

*Counsel for Defendant*:

Jack T. Spinella, Esq.
Steven C. DePalma, Esq.
Nicoll Davis & Spinella LLP
95 Route 17 South, Suite 316
Paramus, NJ 07652